UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT L. QUIROZ | CIVIL ACTION |
| VERSUS | NO. 16-15427 |
| C & G WELDING, INC., OFFSHORE SPECIALTY FABRICATORS, LLC, MONTCO, INC., and PHOENIX SAFETY | SECTION A(5) |

## ORDER AND REASONS

Before the Court is the **Motion for Partial Summary Judgment on OSF Underwriters' Cross-Claim Against C & G Welding Inc. (Rec. Doc. 107)** filed by Atlantic Specialty Insurance Company, Markel American Insurance Company, State National Insurance Company, Navigators Insurance Company, United States Fire Insurance Company, Mitsui Sumitomo Insurance Company of America, Lloyd's Underwriters, and Swiss Re International SE (hereinafter collectively referred to as "OSF Underwriters"), insurers for Offshore Specialty Fabricators, LLC ("OSF"). C & G Welding, Inc. ("C & G") oppose the Motion (Rec. Doc. 114). The Motion, set for submission on October 17, 2018, is before the Court on the briefs without oral argument. This matter is set to be tried to a jury beginning on January 22, 2019. Having considered the motion and memoranda of counsel, the opposition, the reply, the record, and the applicable law, the Court finds that the **Motion for Partial Summary Judgment (Rec. Doc. 107)** is **GRANTED** for the reasons set forth below.

**I.  Background**

On March 7, 2012, C & G entered into a blanket Master Services Contract ("MSC") with Montco Inc. ("Montco"). (Rec. Doc. 107, Exhibit 1 p. 1). The MSC included an indemnity provision in favor of Montco and its contractors. (*Id.,* p. 5). On February 6, 2016, Black Elk

Energy Operations LLC ("Black Elk") entered into a Turnkey Service Agreement with Montco which obligated Montco to decommission various platforms including the W. Cameron Blk. 551 "A" Structure ("WC 551A"). (Rec. Doc. 107, p. 4). Pursuant to the agreement with Black Elk, Montco entered into a Master Time Charter Agreement with OSF dated June 2, 2016, and procured the D/B SWING THOMPSON. (Rec. Doc. 107, Exhibit 2 p. 1). Attached to the Master Time Charter Agreement is an oral Work Order specifying the nature of the decommission projects and the necessary work for derrick barges, including the D/B SWING THOMPSON. (*Id.* p. 9).

Plaintiff Robert Quiroz ("Quiroz") was working on the D/B SWING THOMPSON and the WC 511A platform as a rigger employed by C & G (as payroll employer) and OSF (as borrowing employer). On August 8, 2016, Quiroz sustained injuries when he fell through a deck plate in the engine room of the platform. (Rec. Doc. 114, p. 2). Pursuant to general maritime law and the Jones Act, 46 U.S.C. § 30104, Quiroz filed this lawsuit to recover for his personal injuries alleging the negligence of C & G, OSF, Montco, and Phoenix Safety and Logistics Personnel, Inc. (*Id.* ¶ IX-XII).

After Quiroz filed the lawsuit, OSF requested that C & G defend and indemnify OSF against Quiroz's claims. (Rec. Doc. 107, p. 2). OSF Underwriters asserted that the MSC requires C & G to defend and indemnify Montco and its "contractors and subcontractors of every tier" (such as OSF) and their "insurers and underwriters" (such as OSF Underwriters) for any claims brought against them by employees of C & G (such as Quiroz). Subsequently, OSF Underwriters filed a cross-claim against C & G because C & G denied the defense and indemnity obligations. (*Id.*). OSF now moves for partial summary judgment under the assertion that the defense and

indemnity provisions of the MSC are valid and enforceable under general maritime law because the contract is a maritime contract. (*Id.*).

## II. Legal Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed.R.Civ.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986)). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993)).

## III. Law and Analysis

OSF Underwriters argue that general maritime law applies to govern the contract between OSF and C & G, under which the indemnification and defense provisions therein are enforceable. C & G counters that the contract is not subject to general maritime law because Plaintiff's accident occurred on a fixed platform located off the Louisiana Coast; thus, the

Louisiana Oilfield Anti-Indemnity Act bars OSF Underwriters' cross-claim. In order to determine which law applies, the Court must determine whether the MSC is a maritime or non-maritime contract.

Earlier this year, the Fifth Circuit abandoned the traditional six-factor test established by *Davis & Sons , Inc. v. Gulf Oil Corp.*, 919 F.2d 313 (5th Cir. 1990) because "most of the prongs of the *Davis & Sons* test are unnecessary and unduly complicate the determination of whether a contract is maritime." *In Re Doiron, Incorporated,* 879 F.3d 568, 572 (5th Cir. 2018). The Fifth Circuit in *Doiron* used the principles established in *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004) to require courts to apply a two-prong test in determining whether a contract is maritime:

> First, is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters?...Second, if the answer to the above question is "yes," does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?

*Id.* at 576. The Fifth Circuit emphasized that the focus of this test is on the contract and the expectations of the parties. *Id.*

OSF argues that the first prong of the *Doiron* test is satisfied because the Work Order portion of the MSC is a contract to provide services to facilitate the drilling or production of oil and gas on navigable waters. (Rec. Doc. 107, p. 9). OSF cites *In Re Crescent Energy Services, LLC*, 896 F.3d 350 (5th Cir. 2018) to assert that the decommissioning work of a well satisfies the first prong of *Doiron.* OSF then asserts that the second prong of the *Doiron* test is satisfied because the D/B SWING THOMPSON was expected by OSF and C & G to play a substantial role in the decommissioning project. (*Id.*, p. 11). OSF cites the oral Work Order, C & G's

invoice to Montco, and Quiroz's deposition to support the expectations of the parties and the substantial role of the vessel. (*Id.*, p. 12).

C & G counters that a key distinction in this case from *Doiron* is that the OSF Underwriters are seeking defense and indemnity as a third party beneficiary to the MSC. (Rec. Doc. 114, p. 8). Unlike *Doiron,* the MSC does not specifically involve OSF, the party seeking indemnification. (*Id.*). C & G also argues that unlike the facts in *Crescent,* C & G could not have provided and paid for the supply of vessels which was a critical element in the *Crescent* court's conclusion that the contract was a maritime contract. (*Id.*).

*Doiron* involved a blanket MSC containing an indemnity provision and a subsequent oral Work Order between the same parties. 879 F.3d at 569-570. The narrow issue presented to the Fifth Circuit was whether the MSC was a maritime contract allowing for the enforcement of the indemnity provision. *Id.* at 570. The court looked to the more specific oral Work Order rather than the general MSC to determine the nature of the contract. *Id.* at 577. The oral Work Order dictated work services to be performed on a gas well in navigable waters, and it did not make any reference to the usage of a vessel. *Id.* The court held that though the first prong of the test was satisfied, the usage of a vessel was an insubstantial part of the job and was not expected by the parties. *Id.* at 577. The usage of the vessel only became necessary to resolve an issue that occurred during the project. *Id.* Because the usage of a vessel was an insubstantial part of the job and not part of the parties' expectations when they implemented the oral Work Order, the Fifth Circuit held that the contract was not a maritime contract. *Id.*

Since the decision in *Doiron,* the Fifth Circuit has applied the two-prong test in *Crescent*. The Fifth Circuit held that a contract to plug and abandon various wells qualified as a maritime contract. *In Re Crescent,* 896 F.3d at 360. Again, the court looked not at the more general

language of the MSC but rather the bid which specified the details of the work. *Id.* Similar to *Doiron*, the facts in *Crescent* were such that both companies were parties to the MSC and the subsequent bid contract. *Id.* The court established that the first prong was satisfied because the plugging and abandoning of oil wells is "part of the total life cycle of oil and gas drilling." *Id.* at 356. The court then established that the second prong was satisfied because not only was work performed in part on a vessel and in part on a platform, but also the vessel-based work had importance and value. *Id*. at 359. The parties anticipated the necessity of the barges to operate as a work platform and the bid contract specifically anticipated the use of the vessel. *Id*. at 361.

> It was known that the [vessel] would be necessary as a work platform; that essential equipment would need to remain on that vessel, including a crane; that the most important component of the work, the wireline operation, would be substantially controlled from the barge; and that other incidental uses of the vessel would exist such as for crew quarters.

*Id.* Because the Fifth Circuit found that the two prongs were satisfied, the court held that the contract was a maritime contract. *Id*.

Before applying *Doiron* to this case, it is necessary for the Court to examine the contractual connections between the parties. As noted above, the MSC established blanket obligations between Montco and C & G. Article I of the MSC states,

> In the event [Montco] desires that [C & G] shall perform certain services…and [C & G] agrees to perform and/or provide such Work, [Montco] shall issue a written request, describing the work to be performed and/or provided (each a "Work Order").

(Rec. Doc. 107, Exhibit 1 p. 1). Article I further provides, "Until a Work Order has been created (either verbally or in writing), nothing contained in this Contract shall require [Montco] to retain [C & G] for any Work." (*Id*.). The provision of this contract makes clear that once Montco develops a Work Order, either oral or written, and requests the services of C & G, then the MSC is applicable between the parties. Article XV of the MSC provides the indemnification clause at issue. The clause states that C & G "shall release, protect, defend, indemnify, and hold harmless each member of the company group." (*Id.* p. 5). "Company group" is defined to include Montco and all "contractors and subcontractors of every tier…and insurers and underwriters." (*Id*. p. 1).

Pursuant to the Master Time Charter Agreement, Montco and OSF developed an oral Work Order. (Rec. Doc. 107, Exhibit 2 p. 9). The MSC is applicable between OSF and C & G because the Work Order established OSF as a contractor of Montco. (*Id.*). As a contractor with Montco, OSF is a member of the "company group" as defined by the MSC as provided for in the indemnification clause. (*Id.,* Exhibit 1, pp. 1, 5). The Court finds that the MSC established a contractual relationship between OSF and C & G such that the Work Order binds both parties under the blanket provisions of the MSC. This is supported by the invoice provided by C & G to Montco for the welders and riggers performing work aboard the D/B SWING THOMPSON. (Rec. Doc. 107, Exhibit 3).

The Court now applies the *Doiron* two-prong test to determine whether the indemnification clause is enforceable under maritime law. According to the Fifth Circuit in both *Doiron* and *Crescent,* this Court is not to look at the blanket MSC but rather the contract which specifies the work to be completed. Here, the Work Order lays out the details of the work to be performed. The first prong is whether the contract was one to provide services to facilitate the drilling or production of oil and gas on navigable waters. The work order associated with the

Master Time Charter specifies that barges will be involved in the removal of the listed platform structures. (Rec. Doc. 107, Exhibit 2 p. 9). The Fifth Circuit has held that the plugging and abandoning of oil wells is "part of the total life cycle of oil and gas drilling." *In Re Crescent,* 896 F.3d at 356. Thus, the Court finds the first prong is satisfied.

The second prong is for the Court to determine if the contract provides, or the parties expect, that a vessel will play a substantial role in the completion of the contract. The Work Order establishes that the D/B SWING THOMPSON was anticipated to provide work in the removal of the WC 551A platform. Thus, unlike *Doiron* and similar to *Crescent* a need for vessels was understood, but a determination that the vessel was needed for a substantial amount of the work is still necessary. Quiroz stated in his deposition that his job as a rigger was to prepare the platform for fitters and the welders. (Rec. Doc. 107, Exhibit 5 p. 3). Once a piece of the platform was in the proper shape to be moved, the riggers would rig the piece to a crane (located on the D/B SWING THOMPSON) and the crane would move the piece to a material vessel. (*Id.,* p. 5). Quiroz also stated that he did maintenance work on the D/B SWING THOMPSON spending about seventy percent of his time on the vessel and thirty percent on the platform. (*Id.,* p. 6). Quiroz further provided that the barge was both involved in the housing of the workers and the decommissioning of the platform. (*Id.,* p. 7). The Court finds that the D/B SWING THOMPSON was expected for use by the parties and played a substantial role. Similar to the facts in *Crescent,* D/B SWING THOMPSON was necessary as a work platform in the decommissioning of WC 551A; essential equipment was on the vessel, such as a crane; and it provided other incidental uses such as a place to house C & G workers. The Court finds that the contract before the Court is maritime in nature, and as such, the indemnification clause is applicable under general maritime law.

**IV. Conclusion**

Accordingly;

IT IS ORDERED that the **Motion for Partial Summary Judgment on OSF Underwriters' Cross-Claim Against C & G Welding Inc. (Rec. Doc. 107)** is **GRANTED.**

New Orleans, Louisiana, this 14th day of November, 2018

                                              JUDGE JAY C. ZAINEY
                                     UNITED STATES DISTRICT JUDGE